**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DONTAE CRAWLEY, | ) |
| Plaintiff, | ) Case No. 2:07-cv-00877-RCJ-GWF |
| vs. | ) **FINDINGS & RECOMMENDATIONS** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

This matter is before the Court on Plaintiff's Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 (#3), filed on August 10, 2007; Plaintiff's Motion to Remand (#8), filed on September 7, 2007; Defendant's Answer to Plaintiff's Complaint (#31), filed on April 1, 2008; and Plaintiff's Answers to Defendant's Answers Regarding Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 (#34), filed on April 8, 2008.

Allegations of a pro se complaint are held to less stringent standards than a formal pleading drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Plaintiff filed his pro se complaint on the Court's civil rights complaint form for actions pursuant to 42 U.S.C. § 1983. The substance of Plaintiff's allegations reveal, however, that Plaintiff is not alleging that Defendant committed a civil rights violation under § 1983. Instead, Plaintiff's complaint seeks reversal of the administrative decision denying his claim for Social Security Disability Benefits. In this regard, if the Social Security Administration Appeals Council denies review of the Administrative Law Judge's decision, then within sixty (60) days after receiving notice of denial, the claimant may file an action in the United States District Court requesting review of the Social Security Administration's ("SSA") decision. *See* 42 U.S.C. § 405(g). In this case, Plaintiff did not file his complaint within sixty (60) days

after the Appeals Council affirmed the administrative law judge's decision. However, Robert Goldberg, Administrative Appeals Judge, granted Plaintiff an extension through August 10, 2007. (AR 5). The Court will therefore treat Plaintiff's complaint as a request for judicial review.

## BACKGROUND

Plaintiff is a thirty-nine (39) year male old who alleges that he became disabled on January 2, 2003, due to human immunodeficiency virus (HIV) infection and osteopenia/osteoporosis. (AR 67-69). On May 14, 2004, Plaintiff filed an application for Social Security disability insurance benefits and supplemental security income. (AR 67). On June 22, 2004, Plaintiff's application was denied. (AR 76-80). On July 27, 2004, Plaintiff filed for reconsideration, which was subsequently denied on February 16, 2005. (AR 84-87). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 88). On August 30, 2005, a hearing was held before ALJ Loughry. (AR 88, 344-77).

In his written decision issued on May 23, 2006, ALJ Loughry found that Plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act. (AR 73). ALJ Loughry found that Plaintiff had the following severe impairments: HIV infection and osteopenia/osteoporosis. ALJ Loughry also found, however, that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. (AR 69-70). ALJ Loughry further found that Plaintiff was capable of light level work and was therefore capable of performing his past work as a credit associate, hotel revenue manager, employment services surveyor and hotel auditor. (AR 71-72). Plaintiff, who was then represented by counsel, appealed the ALJ's decision to the Appeals Council. (AR 16). Plaintiff contended that the ALJ's finding that Plaintiff's impairment did not meet or medically equal one of the listed impairments was not supported by substantial evidence. (AR 16). He also contended that the ALJ's finding that Plaintiff was capable of performing his past relevant work was based on unreliable vocational expert testimony. (AR 17). The issue before the Court therefore is whether there is substantial evidence to support ALJ Loughry's decision that Plaintiff was not disabled based on the ALJ's finding at step three and step four of the five-step sequential evaluation.

Plaintiff claimed that his human immunodeficiency virus (HIV), hypertension, high blood pressure, high cholesterol, bone loss and osteoporosis rendered him disabled with the meaning of the

Social Security Act. (AR 74-76, 113). Plaintiff stated that he needs help with preparing foods, shopping for food, and doing laundry. (AR 117). Plaintiff further stated that he has back pain and cannot do much lifting or bending. (AR 132). He also stated that it is hard to sit. *Id.* Plaintiff stated that he is limited in standing and walking for long periods of time, and the medication he takes makes him tired and fatigued. (AR 143). From January 2000 to June 2005, Plaintiff was treated at the University Medical Center ("UMC") in Las Vegas, Nevada where his T-cells, viral load, and testosterone levels were measured. (AR 69, 157-81, 201-13, 217-74, 313-23 ). Dr. Gary L. Schroeder noted that Plaintiff has tested positive for HIV and directed Plaintiff to continue taking his medications. (AR 167). Dr. Schroeder also stated that Plaintiff had hypertension. (AR 170). On May 1, 2004, Dr. Schroeder stated that a DEXA scan upon Plaintiff showed osteoporosis of the hip and medication was prescribed. (AR 201). Dr. Schroeder further noted that Plaintiff's blood pressure was in good control. *Id.* On June 14, 2005, Dr. Schroeder stated that Plaintiff had the following conditions: (1) HIV positive; (2) hypertension; (3) osteoporosis; (4) lower back pain; and (5) had experienced weight loss. (AR 313). During a May 10, 2005 office visit, Dr. Schroeder asked Plaintiff what physical problems prevented him from working. According to the record, Plaintiff stated he did not feel that he had any specific medical problems and that he was able to work. (AR 316). During the hearing before the ALJ, Plaintiff's attorney asked him about this entry. Plaintiff testified that he did not remember even saying that he could work, since he was normally not asked this question. He also testified that he did not mean to indicate to Dr. Schroeder that he could work on an ongoing basis. (AR 366-367).

On April 11, 2003, Dr. Rito B. Maningo performed a physical examination of Plaintiff. (AR 184). Dr. Maningo reported that there was no evidence of kyphosis, scoliosis, or paravertebral muscle spasms in Plaintiff's back and spine. (AR 185). Dr. Maningo reported that Plaintiff's gait, weight bearing, and posture were normal. *Id.* Dr. Maningo further noted that Plaintiff's HIV infection was stable, and Plaintiff was on treatment. *Id.* Dr. Maningo also performed a physical residual functional capacity assessment of Plaintiff. (AR 187-88). Dr. Maningo stated that Plaintiff was capable of lifting and carrying 50 pounds occasionally and 25 pounds frequently. (AR 187). Plaintiff did not need an assistive device that was medically necessary for ambulation. Dr. Maningo also stated that Plaintiff had the ability to stand and/or walk about 6 hours in an 8-hour workday and to sit for 6 hours in an 8-hour

workday with standard breaks and lunch period to provide sufficient relief for Plaintiff to alternate standing and sitting. *Id.* Dr. Maningo also stated that Plaintiff had the postural capacity to frequently climb ramps and ladders, balance, stoop/bend, kneel, crouch/squat, and crawl. *Id.* Plaintiff was not limited in reaching, fingering, handling objects, hearing, seeing, speaking, and traveling. (AR 188). Dr. Maningo also stated that Plaintiff did not have any environmental limitations. *Id.*

On April 21, 2003, a state agency physician, Dr. George Bruce Nickles, performed a physical residual functional capacity assessment of Plaintiff. (AR 189-96). Dr. Nickles stated that Plaintiff was capable of lifting and carrying 50 pounds occasionally and 25 pounds frequently. (AR 190). Plaintiff had the ability to stand and/or walk about 6 hours in an 8-hour workday, and Plaintiff had the ability to sit for 6 hours in an 8-hour workday. *Id.* Dr. Nickles also stated that Plaintiff had the unlimited ability to push and/or pull. *Id.* Postural, manipulative, visual, communicative, and environmental limitations were not established. (AR 191-93). Dr. Nickles stated that Plaintiff's symptoms were attributable to a medically determinable impairment, and the severity or duration of the symptoms was disproportionate to the expected severity or expected duration on the basis of the Plaintiff's medically determinable impairment. (AR 194).

On May 13, 2004, Dr. Ian Haycocks performed an initial DXA bone density test on Plaintiff. (AR 216). Dr. Haycocks concluded that Plaintiff's bone density test in the lumbar spine was diagnostic of osteoporosis, and the Plaintiff's bone density test in the proximal femur was diagnostic of osteopenia; borderline osteoporosis. *Id.*

On February 14, 2005, a state agency physician, Dr. Julius Villaflor, performed a physical residual functional capacity assessment of Plaintiff. (AR 305-312). Dr. Villaflor stated that Plaintiff was capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently. (AR 306). Plaintiff had the ability to stand and/or walk about 2 hours in an 8-hour workday, and the ability to sit for 6 hours in an 8-hour workday. *Id.* Dr. Villaflor also stated that Plaintiff had the unlimited ability to push and/or pull. *Id.* As to Plaintiff's postural limitations, the physician noted that Plaintiff could (1) occasionally climb ramps or stairs, kneel, and crawl; (2) frequently balance, stoop, and crouch; and (3) never climb ladders, ropes, or scaffolds. (AR 307). Dr. Villaflor also stated that manipulative, visual, and communicative limitations were not established. (AR 308-09). As to Plaintiff's environmental

limitations, the physician stated that Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards. (AR 309). Dr. Villaflor stated that Plaintiff's symptoms were attributable to a medically determinable impairment, and that the severity or duration of the symptoms was disproportionate to the expected severity or expected duration on the basis of the Plaintiff's medically determinable impairment. (AR 310). Dr. Villaflor noted that his residual functional capacity findings were different from those made by Dr. Maningo in 2003. In this regard, Dr. Villaflor stated that Dr. Maningo's findings were consistent with medium work. Dr. Villaflor stated that his residual functional capacity report was done in the context of the overall records and in the context of the need to maintain a 40 hour per week work schedule. (AR 311).

On June 20, 2005, Dr. Carl Recine evaluated an x-ray of Plaintiff's spine. (AR 331-33). Dr. Recine stated: "Five routine views show normal vertebral body alignment and well maintained interspaces throughout. No signficant degenerative or destructive lesions were noted. There is no evidence of bony injury. There is no evidence of spondylolysis or other significant congenital anomalies. The adjacent soft tissue structures are normal." (AR 333).

At the August 30, 2005 hearing, Plaintiff testified that he was HIV positive and had osteoporosis. (AR 347). Plaintiff testified that his HIV and/or osteoporosis prevented him from playing basketball and tennis. (AR 348). He stated that he was diagnosed with HIV in 1995. *Id.* Plaintiff further testified that he had diarrhea, weakness, headaches, fever, continual weight loss, breathing problems, persistent coughing, chest pain and numbness in his hands and feet. (AR 349). Plaintiff testified that he had a change in taste, problems with memory and coordination or dizziness, vomiting, and nausea. *Id.* The ALJ noted at the hearing that Plaintiff's T cells have increased and the viral load has decreased. (AR 350). The ALJ further noted that in July 2003, Plaintiff had an excellent T cell count, which was a reason why Plaintiff has not progressed to AIDS. *Id.* Plaintiff testified that he had surgery for his hemorrhoids in July or August 2004. *Id.* He stated that he had been diagnosed with high blood pressure and high cholesterol since taking medications, and that he did not know if the HIV or the medications were causing these symptoms. *Id.*

Dr. Robin Generaux, vocational expert ("VE"), testified at the hearing that Plaintiff's past work

as a night auditor and revenue manager are both sedentary work. (AR 373). The ALJ hypothetically asked Dr. Generaux if someone who had the ability to lift 20 pounds occasionally and 10 pounds frequently, stand and walk 2 hours in an 8-hour day, and sit for 6 hours, could perform the job of night auditor or revenue manager. Dr. Generaux testified that the person would be able to perform both jobs. (AR 374). The ALJ further asked Dr. Generaux to assume that the same person's concentration was impaired to the extent that he was limited to unskilled work. He then asked whether there were available unskilled jobs that this person could perform with those additional limitations. *Id.* Dr. Generaux testified that the person could perform the duties of a cashier, either I or II, which is sedentary work. *Id.* Dr. Generaux testified that under the sedentary work category, there are cashier and order clerk positions available in both the national economy and Las Vegas, Nevada area. (AR 375).

## DISCUSSION

### I. Standard of Review

A federal court's review of an ALJ's decision is limited to determining only (1) whether the ALJ's findings were supported by substantial evidence and (2) whether the ALJ applied the proper legal standards. *Delorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991). The Court must look to the record as a whole and consider adverse and supporting evidence. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). "Substantial evidence is defined as 'more than a scintilla but less than a preponderance.'" *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (*quoting Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). Hence, where the evidence may be open to more than one rational interpretation, the court is required to uphold the decision. *Moore v. Apfel*, 216 F.3d 864, 871 (9th Cir. 2000) (*quoting Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)).

### II. Whether the ALJ's Decision Is Supported by Substantial Evidence

Social Security disability claims are evaluated under a five-step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)-(f). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The claimant carries the burden with respect to steps one through four. *Tackett*, 180 F.3d at 1098. If a claimant is found to be disabled, or not disabled, at any point during the process, then no further assessment is necessary. 20 C.F.R. § 404.1520(a). Under the first step, the Secretary determines whether a claimant is currently engaged in substantial gainful activity. *Id.* § 416.920(b). If so, the

claimant is not considered disabled. *Id*. § 404.1520(b). Second, the Secretary determines whether the claimant's impairment is severe. *Id.* § 416.920(c). Again, if the impairment is not severe, the claimant is not considered disabled. *Id*. § 404.152(c). Third, the claimant's impairment is compared to the "List of Impairments" found at 20 C.F.R. § 404, Subpt. P, App. 1. The claimant will be found disabled if the claimant's impairment meets or equals a listed impairment. *Id*. § 404.1520(d). If a listed impairment is not met or equaled, the fourth inquiry is whether the claimant can perform past relevant work. *Id*. § 416.920(e). If the claimant can engage in past relevant work, then no disability exists. *Id*. § 404.1520(e). If the claimant cannot perform past relevant work, the Secretary has the burden to prove the fifth and final step by demonstrating that the claimant is able to perform other kinds of work. *Id*. § 404.1520(f). If the Secretary cannot meet his or her burden, the claimant is entitled to disability benefits. *Id*. § 404.1520(a).

In applying the first two steps of the sequential evaluation under 20 C.F.R. § 404.1520(a), ALJ Loughry found that (1) Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision and (2) Plaintiff's HIV infection and osteopenia/osteoporosis were considered severe.

Pursuant to 20 C.F.R. §§ 404.1525, 416.925, the claimant must establish through evidence that he or she meets each characteristic of a listed impairment relevant to his or her claim. To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment. 20 C.F.R. §§ 404.1525(a), 416.925(a). The Listings describe specific impairments for each of the major body systems "which are considered severe enough to prevent a person from doing any gainful activity." *See* 20 C.F.R. §§ 404.1525(a), 416.925(a). Most of these impairments are "permanent or expected to result in death." *Id*. "For all others, the evidence must show that the impairment has lasted or is expected to last for a continuous period of at least 12 months." *Id.* Appendix 1 provides a categorization of physical impairments including osteoporosis and HIV infection. *See* 20 C.F.R. § 404, Subpt. P, App. 1., § 6.00, 14.08. In evaluating the third step, the ALJ found that Plaintiff's HIV infection and osteopenia/ osteoporosis did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1.

. . .

1        The regulations provide in relevant part that "[a]ny individual with HIV infection ... may be
2   found disabled under this listing if his or her impairment meets any of the criteria in 14.08 or is of
3   equivalent severity to any impairment in 14.08." 20 C.F.R. § 404, Subpt. P, App. 1, § 14.00(D)(1).
4   The ALJ determined that Plaintiff's HIV infection did not reach the level of severity to meet or
5   medically equal the requirement of Listing 14.08. (AR 70). The ALJ determined that Plaintiff did not
6   suffer from significant bacterial, fungal, protozoan or helminthic or viral infections pursuant to Listing
7   14.08. *Id.* The ALJ also determined that Plaintiff did not have any neurological abnormalities because
8   Plaintiff did not experience cognitive or motor dysfunction caused by the HIV infection. *Id.* The ALJ
9   further determined that Plaintiff's back disorders did not meet or medically equal one of the listed
10  impairments. *Id.* The ALJ noted that there was no evidence that demonstrated significant limitations in
11  Plaintiff's ability to stand, walk or sit for long periods of time and he was able to perform activities of
12  daily living. *Id.*

13       Plaintiff contends that the ALJ's step three finding that he was not disabled was not supported
14  by substantial evidence and that he has conditions which meet portions of the listing section under
15  14.08F and 14.08I. (AR 16). Listing 14.08F states in relevant part that "conditions of the skin or
16  mucous membranes with extensive fungating or ulcerating lesions not responding to treatment (e.g.,
17  dermatological conditions such as eczema or psoriasis, vulvovaginal or other mucosal candida,
18  condyloma caused by human papillomavirus, genital ulcerative disease)." 20 C.F.R. § 404, Subpt. P,
19  App. 1., § 14.08F. In addition to the diagnosis, however, the duration requirement must also be met,
20  i.e., the condition must have lasted or be expected to last for a continuous period of 12 months. *See* 20
21  C.F.R. §§ 404.1525(c)(4), 416.925(c)(4).

22       Plaintiff's medical records reflect a diagnosis of lesions and condyloma. On two occasions, Dr.
23  Schroeder stated that Plaintiff had rectal condyloma. First, on May 1, 2004, Dr. Schroeder noted that
24  Plaintiff had rectal condyloma in which Plaintiff had "numerous areas of prolapsing mucosa and a
25  center area erythematous with 'cauliflowery' legion." (AR 201). Dr. Schroeder further noted that he
26  prescribed Aldara cream and requested that Plaintiff return for a follow-up evaluation. *Id.* In Dr.
27  Schroeder's June 2, 2004 report, he stated that Plaintiff had "severe rectal lesions, verrucous exophytic
28  lesions." (AR 322). Dr. Shroeder ruled out "malignancy versus anal condyloma." *Id.* Dr. Schroeder

further stated that Plaintiff should be "referred to the colorectal surgeon for resection and excisional biopsy and treatment." *Id.* On June 15, 2004, Dr. J. Dylan Curry noted that Plaintiff had "excoriated external hemorrhoids which are not actively bleeding, but which are present." (AR 324). Dr. Curry further noted that Plaintiff may possibly have anal condylomata. (AR 325). On June 17, 2004, UMC personnel noted that Plaintiff was referred for colorectal surgery for rectal lesions. (AR 275). The medical records of Dr. Schroeder, Dr. Curry, and UMC medical personnel indicate that Plaintiff's rectal lesions and condyloma occurred between May 1, 2004 to June 17, 2004. Following Dr. Curry's surgical treatment, Plaintiff's subsequent medical reports do not indicate that he continued to suffer from lesions and condyloma. Based on the medical records, it does not appear that Plaintiff's lesions and condyloma failed to respond to treatment or that these conditions were continuous over a period of 12 months. Therefore, Plaintiff's conditions do not meet the severity required by § 14.08F.

Plaintiff also contends that the ALJ's finding that Plaintiff was not disabled pursuant to Listing 14.08I is not supported by substantial evidence. Listing 14.08I states:

> HIV wasting syndrome, characterized by involuntary weight loss of 10 percent or more of baseline (or other significant involuntary weight loss, as described in 14.00D2) and, in the absence of a concurrent illness that could explain the findings, either:
>
> 1. Chronic diarrhea with two or more loose stools daily lasting for 1 month or longer; or
>
> 2. Chronic weakness and documented fever greater than 38° C (100.4° F) for the majority of 1 month or longer.

20 C.F.R. § 404, Subpt. P, App. 1., § 14.08I.

Plaintiff stated that he experienced involuntary weight loss of 10 percent or more, and therefore, he met the requirements for Listing 14.08. In response, the SSA Appeals Council noted that the record reveals that Plaintiff did not have the other conditions required in Listing 14.08I. (AR 6). The medical reports show that Plaintiff experienced significant weight loss.[1] On January 9, 2003, Dr. Schroeder noted that Plaintiff weighed 147 pounds. (AR 212). On June 7, 2005, Dr. Schroeder noted that

---

[1] Plaintiff weighed 147 pounds in January 2003 and 124 pounds in June 2005. Plaintiff's weight never rose above 147 pounds or dropped below 119 pounds. Plaintiff's weight never changed more than 9 pounds between check-ups.

Plaintiff weighed 124 pounds. (AR 314). In about a two and half year period, Plaintiff had weight loss of 10 percent or more. Plaintiff therefore appeared to meet the first requirement of Listing 14.08I. In addition to an involuntary weight loss of 10 percent or more, there must also be evidence of chronic diarrhea with two or more loose stools daily lasting for one month or longer or; chronic weakness for the majority of one month or longer. § 14.08I. Plaintiff testified at the August 20, 2005 hearing that he continued to have severe diarrhea, and he had weakness, and sometimes headaches, and fever. Dr. Shroeder, who saw Plaintiff on a regular basis, did not discuss a specific cause(s) for Plaintiff's weight loss. His records do not indicate that Plaintiff complained of chronic diarrhea or chronic weakness. Dr. Maningo noted in his April 11, 2003 report that Plaintiff has occasional episodes of diarrhea. (AR 183). The medical reports therefore support the conclusion that Plaintiff had occasional or intermittent diarrhea, but do not show that he suffered from chronic diarrhea with two or more loose stools daily lasting for one month or longer. Nor do the records indicate that Plaintiff had chronic weakness and documented fever greater than 38° C (100.4° F) for the majority of one month or longer. The ALJ appeared to properly discount the credibility of Plaintiff's testimony regarding these symptoms or conditions because they were not supported by his medical records. Viewing the medical evidence, as a whole, therefore, the Court finds that substantial evidence supports the ALJ/Appeals Council's determination that Plaintiff's HIV infection did not reach the level of severity to meet or medically equal the requirement of Listing 14.08F and Listing 14.08I of the Appendix.

Plaintiff contends that because the ALJ stated he was having difficulty reading and/or was unable to read the handwritten medical record at Exhibit 10F (AR 290-292; AR 350-351), he should have called a medical expert to assist him at the August 30, 2005 hearing. (AR 16). The records at issue appear to be progress notes by Dr. Schroeder, dated November 3 and 19, 2004. While these records are difficult to read, they are not completely indecipherable. It also appears from the November 19th note that Plaintiff stated he was feeling better and was urinating more freely. (AR 290). In addition, the record contains subsequent typewritten office notes by Dr. Schroeder from December 7, 2004 up through June 1, 2005. (AR 313-318). In response to Plaintiff's argument, the SSA Appeals Council noted that the ALJ considered all of the medical evidence. (AR 6). The SSA Appeals Council further noted that "while a few of the words in the notes in Exhibit 10F may be undecipherable, the

major portion of the notes can be understood." *Id.* Therefore, while the ALJ correctly found that some of the notes in Exhibit 10F were illegible, the entire record, as a whole, was neither ambiguous nor inadequate to allow for proper evaluation of the evidence. *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (holding that the duty to develop the record is only triggered when the ALJ finds the record inadequate to allow for proper evaluation of the evidence). The Court agrees with the SSA Appeals Council's finding that ALJ Loughry considered all of the medical evidence in determining his step three finding. Accordingly, the Court finds that the medical evidence provided by Plaintiff's treating, examining, and consulting physicians provides substantial evidence that the ALJ's determination that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments was proper. Furthermore, the Court finds that ALJ Loughry did not need a medical expert to assist him at the August 30, 2005 hearing.

The fourth step of the sequential analysis is whether the claimant had the residual functional capacity to perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ reviews a claimant's residual functional capacity and the physical and mental demands of the work he or she has previously performed. *Id*. If the ALJ determines the claimant has the residual functional capacity required to perform his past work, the claimant is found not disabled. Because Plaintiff bears the burden of establishing steps one through four, he must show that he cannot return to his prior job. *See Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). In evaluating the fourth step, the ALJ found that Plaintiff had the residual functional capacity to lift/carry 20 pounds occasionally and 10 pounds frequently, stand and walk about 2 hours and sit 6 hours in an 8-hour workday. (AR 71-72). This finding was supported by the reports of Dr. Maningo (who gave Plaintiff a higher residual functional capacity rating) and by the state agency physicians. There was no contrary medical opinion regarding Plaintiff's residual functional capacity. Based on Plaintiff's residual functional capacity, the ALJ found that he was able to perform light work.

The ALJ also found that Plaintiff was capable of performing past relevant work as a credit associate, hotel revenue manager, employment services surveyor and hotel auditor. (AR 72). The ALJ relied upon Dr. Generaux's August 30, 2005 testimony in making his finding. Plaintiff argued that "[t]he ALJ's step four decision based on vocational expert testimony appears to rest on unreliable

testimony, in that the claimant's documentary evidence of past work, conflicts with the vocational expert's description, 'as actually' performed." (AR 17). In addition, Plaintiff argues that "the overall description in the documentary record, bears little resemblance to the vocational expert's testimony." (AR 17).

Work that a claimant performed within the last 15 years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity, is considered past relevant work. *See* 20 C.F.R. §§ 404.1565(a), 416.965(a). As required by the SSA, Plaintiff provided a list of jobs he performed for the past 15 years on the SSA work history form.[2] (AR 144). At the August 30, 2005 hearing, Dr. Generaux testified that she was unclear as to Plaintiff's past work history. (AR. 372). Plaintiff testified that he performed work as a revenue manager, and prior to that, he performed work as a night auditor. *Id.* In regard to Plaintiff's past employment as a hotel front desk employee, Dr. Generaux asked Plaintiff if his past employment involved working as a hotel bellman. Plaintiff testified that he was not employed as a bellman, although his duties as a front desk employee could include assisting the bellmen on occasion. Based on Plaintiff's testimony, Dr. Generaux testified that Plaintiff's work as a revenue manager and a night auditor was classified as sedentary. (AR 373).

Plaintiff stated in the SSA work history form that as a revenue manager, he would frequently lift 10 pounds with a maximum of 20 pounds. (AR 148-49). It therefore appears that Plaintiff's past relevant work as a revenue manager qualified as light work. Pursuant to 20 C.F.R. § 404.1567 and 416.967, "[i]f someone can do light work, we determine that he or she can also do sedentary work unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." Because the ALJ determined that Plaintiff was capable of performing light work, Plaintiff was also capable of performing sedentary work. Thus, Dr. Generaux's arguably erroneous finding that the Plaintiff's past work as a revenue manager and an auditor was sedentary as opposed to light work is irrelevant because there is substantial evidence to support the finding that he was capable of performing light work– which included his past relevant work.

---

[2]From November 1995 to March 2004, Plaintiff noted that he had the following job titles: night audit supervisor, front office manager, auditor, surveyist, front office agent, associate, revenue manager/front office associate, credit associate, and media specialist.

A vocational expert's testimony is reliable if the hypothetical includes all of the physical limitations supported by the record. *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002). The ALJ posed a hypothetical question to Dr. Generaux and asked her whether an individual who had the residual functional capacity to perform light duty work along with other physical restrictions was capable of performing work as a night auditor or a revenue manager. (AR 374). Dr. Generaux testified that the individual could perform either job. Additionally, Dr. Generaux testified that Plaintiff could perform a number of sedentary jobs in the national economy. (AR 72). Dr. Generaux testified that jobs included cashier with 7,387 jobs in Nevada and 144,525 jobs nationally; interviewer, 402 jobs in Nevada and 23,157 jobs nationally; and order clerk, 153 jobs in Nevada and 257,660 jobs in the national economy. *Id.* The Court finds that the ALJ did not improperly base his step four finding on the vocational expert's testimony. Furthermore, the Court finds that the ALJ correctly ensured that all of Plaintiff's limitations were expressed when he posed the two hypothetical questions to Dr. Generaux. Thus, Dr. Generaux's testimony was reliable.

Viewing the evidence, as a whole, the Court finds that substantial evidence supports ALJ Loughry's conclusion that Plaintiff had the residual functional capacity to perform his past relevant work as a credit associate, hotel revenue manager, employment services surveyor and hotel auditor. Because the ALJ's determination that Plaintiff was not disabled at the fourth step of the sequential analysis was not erroneous, the ALJ was not required to advance to the fifth step. *See* 20 C.F.R. § 404.1520(a)(4) ("if we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."). Nevertheless, there is also substantial evidence in the record that Plaintiff was not disabled at the fifth step of the sequential analysis based on his ability to perform other light duty and sedentary work that is available in the local and national economy.

## CONCLUSION

The Court finds that ALJ Loughry's findings and determination that Plaintiff was not disabled was supported by substantial evidence and the proper legal standards were applied. Accordingly,

. . .

. . .

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion to Remand (#8) the denial of Social Security Disability Benefits should be **denied** in accordance with the ALJ's decision (AR 67-73), dated May 23, 2006, and the subsequent decision of the Appeals Council, dated May 3, 2007 (AR 6-7).

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within ten (10) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 7th day of August, 2008.

_____
**GEORGE FOLEY, JR.**
**UNITED STATES MAGISTRATE JUDGE**