1

2

3

4                        **UNITED STATES DISTRICT COURT**

5                              **DISTRICT OF NEVADA**

6   DONTAE CRAWLEY,                    )
                                       )        2:07-cv-00877-RCJ-GWF
7                    Plaintiff,        )
                                       )
8        vs.                           )              **ORDER**
                                       )
9   MICHAEL J. ASTRUE, COMMISSIONER OF )
    SOCIAL SECURITY                    )
10                                     )
                     Defendant.        )
11  _____ )

12          Before the Court are Plaintiff Dontae Crawley's ("Crawley") motion for judicial review of

13   the Commissioner of Social Security's ("Commissioner") denial of Social Security and

14   Supplemental Security Income ("SSI") disability benefits (#3), Crawley's motion to remand (#8),

15   and Crawley's objections to the Report and Recommendation of Magistrate Judge George W. Foley,

16   Jr. (#47, #48).  The Court has considered the motions and pleadings on file and any oral argument

17   before the Court.  IT IS HEREBY ORDERED that Crawley's motion to remand is *denied*.

18   **I.      FACTS**

19          **A.      The History of Crawley's Application for SSI Benefits**

20          On May 14, 2004, Crawley submitted claims for Social Security and Supplemental Security

21   Income ("SSI") disability benefits to the Social Security Administration ("SSA").  (AR 67, 74–80).

22   Crawley claimed entitlement to SSI disability benefits based upon a number of disabilities—HIV,

23   high blood pressure, high cholesterol, osteoporosis, and bone loss—that had allegedly disabled him

24   since January 2, 2003.  (AR 76).  After reviewing the medical evidence, the SSA concluded that

25   Crawley's conditions were not severe enough to prevent him from working.  (AR 76).  On June 22,

1  2004, the SSA denied Crawley's application.  (AR 76).  On July 27, 2004, Crawley filed a request

2  for reconsideration.  (AR 84).  Upon reviewing the medical evidence, including having Crawley's

3  claim independently reviewed by a physician and disability examiner employed by the State, the SSA

4  concluded that the initial denial was proper and that Crawley was capable of performing sedentary

5  types of work.  (AR 85).  On February 16, 2005, the SSA denied Crawley's request for

6  reconsideration.  (AR 85–87).  On March 22, 2005, Crawley requested a hearing by an ALJ.  (AR

7  88).  On August 30, 2005, ALJ Daniel F. Loughry conducted the hearing.  (AR 88, 344–77).

8  Crawley was represented by counsel for the hearing.  (AR 67).

9       After holding the hearing and considering all of the evidence, the ALJ concluded that

10 Crawley was not disabled as defined under the Social Security Act.  (AR 67).  In Crawley's favor,

11 the ALJ concluded that Crawley had not engaged in substantial gainful activity at any time relevant

12 to the ALJ's decision and that Crawley suffered from two severe impairments: HIV infection and

13 osteopenia/osteoporosis.  (AR 69).  However, the ALJ made the following conclusions against

14 Crawley: (1)  Crawley did not have an impairment or combination of impairments that meets or

15 medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (AR

16 70); (2) Crawley's impairments did not sufficiently restrict Crawley; and (3) Crawley had the

17 residual functional capacity to do the following:  lift and carry twenty pounds occasionally and ten

18 pounds frequently; stand and walk two hours, and sit six hours in an eight-hour workday; occasional

19 climbing, balancing, stopping, kneeling, crouching, and crawling.  (AR 71).

20      On May 23, 2006, represented by counsel, Crawley submitted an appeal of the ALJ's

21 decision to the SSA Appeals Council.  (AR 16–17).  Crawley argued that the ALJ's decision was not

22 supported by substantial evidence.  (AR 16).  Crawley cited to a number of medical records that he

23 believes prove that Crawley suffered from impairments that met or equaled the requirements of

24 14.08I and/or 14.08F.  (AR 16).  Crawley also argued that the ALJ did not properly consider certain

25 medical notes that the ALJ allegedly could not read.  (AR 16).  Crawley  also argued that the

1  vocational expert testimony relied upon by the ALJ was unreliable.  (AR 17).  On August 7, 2006,

2  the Appeals Counsel denied Crawley's request for review.  (AR 18).  On May 3, 2007, the Appeals

3  Counsel provided additional information as to why Crawley's request was denied.  (AR 6).

4      **B.      The Medical Evidence Underlying the ALJ's Decision**

5          In reaching his conclusion, the ALJ considered medical records from multiple physicians who

6  had treated or examined Crawley over the years.  From January 2000 to June 2005, the University

7  Medical Center ("UMC") in Las Vegas treated Crawley and measured Crawley's T-cells, viral load,

8  and testosterone levels.  (AR 69, 157–81, 201–13, 217–74, 313–23 ).  One UMC physician, Dr. Gary

9  L. Schroeder, noted that Crawley had tested positive for HIV and directed Crawley to continue taking

10  his medications.  (AR 167).  Dr. Schroeder also stated that Crawley had hypertension.  (AR 170).

11  On May 1, 2004, Dr. Schroeder stated that a DEXA scan upon Crawley showed osteoporosis of the

12  hip and medication was prescribed.  (AR 201).  Dr. Schroeder further noted that Crawley's blood

13  pressure was in good control.  *See id.*  On June 14, 2005, Dr. Schroeder stated that Crawley had the

14  following conditions: (1) HIV positive; (2) hypertension; (3)  osteoporosis; (4) lower back pain; and

15  (5) had experienced weight loss.  (AR 313).  During a May 10, 2005 visit, Dr. Schroeder asked

16  Crawley what physical problems prevented him from working.  According to the record, Crawley

17  stated he did not feel that he had any specific medical problems and that he was able to work.  (AR

18  316).  During the hearing before the ALJ, Crawley's attorney asked him about this entry.  Crawley

19  testified that he did not recall representing that he could work and that he did not mean to indicate

20  to Dr. Schroeder that he could work on an ongoing basis.  (AR 366–367).

21          On April 11, 2003, Dr. Rito B. Maningo performed a physical examination of Crawley.  (AR

22  184).  Dr. Maningo reported that there was no evidence of kyphosis, scoliosis, or paravertebral

23  muscle spasms in Crawley's back and spine.  (AR 185).  Dr. Maningo reported that Crawley's gait,

24  weight bearing, and posture were normal.  *See id.*  Dr. Maningo further noted that Crawley's HIV

25  infection was stable, and that Crawley was being treating for his infection.  *See id.*  Dr. Maningo also

1  performed a physical residual functional capacity assessment.  (AR 187–88).  Dr. Maningo stated

2  that Crawley was capable of lifting and carrying 50 pounds occasionally and 25 pounds frequently.

3  (AR 187).  Crawley did not need an assistive device that was medically necessary for ambulation.

4  Dr. Maningo also stated that Crawley had the ability to stand and/or walk about 6 hours in an 8-hour

5  workday and to sit for 6 hours in an 8-hour workday with standard breaks and lunch period to

6  provide sufficient relief for Crawley to alternate standing and sitting.  *See id.*  Dr. Maningo also

7  stated that Crawley had the postural capacity to frequently climb ramps and ladders, balance,

8  stoop/bend, kneel, crouch/squat, and crawl.  *See id.*  Crawley was not limited in reaching, fingering,

9  handling objects, hearing, seeing, speaking, and traveling.  (AR 188).  Dr. Maningo also stated that

10  Crawley did not have any environmental limitations.  *See id.*

11       On April 21, 2003, a state agency physician, Dr. George Bruce Nickles, performed a physical

12  residual functional capacity assessment of Crawley.  (AR 189–96).  Dr. Nickles stated that Crawley

13  was capable of lifting and carrying 50 pounds occasionally and 25 pounds frequently.  (AR 190).

14  Dr. Nickles also concluded that Crawley had the ability to stand and/or walk about 6 hours in an 8-

15  hour workday, and that Crawley had the ability to sit for 6 hours in an 8-hour workday.  *See id.*  Dr.

16  Nickles also stated that Crawley had the unlimited ability to push and/or pull.  *See id.*  Postural,

17  manipulative, visual, communicative, and environmental limitations were not established.  (AR

18  191–93).  Dr. Nickles stated that Crawley's symptoms were attributable to a medically determinable

19  impairment, and the severity or duration of the symptoms was disproportionate to the expected

20  severity or expected duration on the basis of Crawley's medically determinable impairment.  (AR

21  194).

22       On May 13, 2004, Dr. Ian Haycocks performed an initial DXA bone density test on Crawley.

23  (AR 216).  Dr. Haycocks concluded that Crawley's bone density test in the lumbar spine was

24  diagnostic of osteoporosis, and that Crawley's bone density test in the proximal femur was

25  diagnostic of osteopenia; borderline osteoporosis.  *See id.*

1       On February 14, 2005, a state agency physician, Dr. Julius Villaflor, performed a physical

2  residual functional capacity assessment of Crawley.  (AR 305–312).  Dr. Villaflor stated that

3  Crawley was capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently.  (AR

4  306).  Dr. Villaflor also concluded that Crawley had the ability to stand and/or walk about 2 hours

5  in an 8-hour workday, and the ability to sit for 6 hours in an 8-hour workday.  *See id.*  Dr. Villaflor

6  also stated that Crawley had the unlimited ability to push and/or pull.  *See id.*  As to Crawley's

7  postural limitations, the physician noted that Crawley could (1) occasionally climb ramps or stairs,

8  kneel, and crawl; (2) frequently balance, stoop, and crouch; and (3) never climb ladders, ropes, or

9  scaffolds.  (AR 307).  Dr. Villaflor also stated that manipulative, visual, and communicative

10  limitations were not established.  (AR 308-09).  As to Crawley's environmental limitations, the

11  physician stated that Crawley should avoid concentrated exposure to extreme cold, extreme heat,

12  wetness, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards.  (AR 309).  Dr. Villaflor

13  stated that Crawley's symptoms were attributable to a medically determinable impairment, and that

14  the severity or duration of the symptoms was disproportionate to the expected severity or expected

15  duration on the basis of the Crawley's medically determinable impairment.  (AR 310).  Dr. Villaflor

16  noted that his residual functional capacity findings were different from those made by Dr. Maningo

17  in 2003.  In this regard, Dr. Villaflor stated that Dr. Maningo's findings were consistent with medium

18  work.  Dr. Villaflor stated that his residual functional capacity report was done in the context of the

19  overall records and in the context of the need to maintain a 40 hour per week work schedule.  (AR

20  311).

21       On June 20, 2005, Dr. Carl Recine evaluated an X-ray of Crawley's spine.  (AR 331–33).

22  Dr. Recine stated: "Five routine views show normal vertebral body alignment and well maintained

23  interspaces throughout.  No significant degenerative or destructive lesions were noted.  There is no

24  evidence of bony injury.   There is no evidence of spondylolysis or other significant congenital

25  anomalies.  The adjacent soft tissue structures are normal."  (AR 333).

1    **C.      Testimony Heard by the ALJ**

2    At the August 30, 2005 hearing, Crawley testified that he was HIV positive and had

3    osteoporosis.  (AR 347).  Crawley testified that his HIV and/or osteoporosis prevented him from

4    playing basketball and tennis.  (AR 348).  He stated that he was diagnosed with HIV in 1995.  *See*

5    *id.*  Crawley further testified that he had diarrhea, weakness, headaches, fever, continual weight loss,

6    breathing problems, persistent coughing, chest pain and numbness in his hands and feet.  (AR 349).

7    Crawley testified that he had a change in taste, problems with memory and coordination or dizziness,

8    vomiting, and nausea.  *Id.*  The ALJ noted at the hearing that Crawley's T-cells had increased and

9    the viral load has decreased.  (AR 350).  The ALJ further noted that in July 2003, Crawley had an

10    excellent T-cell count, which was a reason why Crawley has not progressed to AIDS.  *See id.*

11    Crawley testified that he had surgery for his hemorrhoids in July or August 2004.  *See id.*  He stated

12    that he had been diagnosed with high blood pressure and high cholesterol since taking medications,

13    and that he did not know if the HIV or the medications were causing these symptoms.  *See id.*

14    Dr. Robin Generaux, vocational expert ("VE"), testified at the hearing that Crawley's past

15    work as a night auditor and revenue manager are both sedentary work.  (AR 373).  The ALJ

16    hypothetically asked Dr. Generaux if someone who had the ability to lift 20 pounds occasionally and

17    10 pounds frequently, stand and walk 2 hours in an 8-hour day, and sit for 6 hours, could perform

18    the job of night auditor or revenue manager.  Dr. Generaux testified that the person would be able

19    to perform both jobs.  (AR 374).  The ALJ further asked Dr. Generaux to assume that the same

20    person's concentration was impaired to the extent that he was limited to unskilled work.  He then

21    asked whether there were available unskilled jobs that this person could perform with those

22    additional limitations.  *See id.*  Dr. Generaux testified that the person could perform the duties of a

23    cashier, either I or II, which is sedentary work.  *See id.*  Dr. Generaux testified that under the

24    sedentary work category, there are cashier and order clerk positions available in both the national

25    economy and the Las Vegas, Nevada area.  (AR 375).

1    On August 7, 2008, Magistrate Judge George Foley, Jr. ("Judge Foley") issued a Report and

2    Recommendation ("Report") advising this Court to uphold the Commissioner or ALJ's decision and

3    to deny Crawley's motion to remand.  (#47).  Crawley has objected to the Report.  (#48).

4    **II.    PRO SE STANDARD**

5    Allegations by *pro se* petitioners, "however inartfully pleaded," are held "to less stringent

6    standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

7    Thus, where a plaintiff appears *pro se* in a civil rights case, the court must construe the pleadings

8    liberally and afford the plaintiff any benefit of the doubt.  *See Karim-Panahi v. Los Angeles Police*

9    *Dept.*, 839 F.2d 621, 623–24 (9th Cir. 1988).  Nonetheless, a *pro se* plaintiff is not entirely immune

10   from the civil rules of procedure.  Although the Court must construe the pleadings liberally, "[p]ro

11   se litigants must follow the same rules of procedure that govern other litigants."  *King v. Atiyeh*, 814

12   F.2d 565, 567 (9th Cir. 1987).  *See also, Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995)

13   ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of

14   procedure."); *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986) ("[P]ro se litigants in the

15   ordinary civil case should not be treated more favorably than parties with attorneys of record.").

16   **III.    STANDARD OF REVIEW**

17   **A.    Review of Judge Foley's Report**

18   A district court has jurisdiction to review the report and recommendation on dispositive

19   pretrial motions. Fed. R. Civ. P. 72(b).  "The district judge to whom the case is assigned shall make

20   a *de novo* determination upon the record, or after additional evidence, of any portion of the

21   magistrate judge's disposition to which specific written objection has been made in accordance with

22   this rule."  *Id*.; *see also* 28 U.S.C. § 636(b)(1)©.  "A judge of the court may accept, reject, or modify,

23   in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. §

24   636(b)(1)©.  It is "clear that the district judge must review the magistrate judge's findings and

25   recommendations *de novo* if objection is made, but not otherwise."  *United States v. Reyna-Tapia*,

1   328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis in original); *see also* 28 U.S.C. § 636(b)(1)

2   ("the court shall make a *de novo* determination of those portions of the [report and recommendation]

3   to which objection is made.").

4          **B.      Review of the ALJ's Decision**

5          When the Appeals Council denied Crawley's request for review of the ALJ's decision, the

6   ALJ's decision became the final decision of the Commissioner.  Pursuant to 42 U.S.C. § 405(g), this

7   Court has authority to review the Commissioner's decision to deny benefits.  The decision will be

8   disturbed only if it is not supported by substantial evidence or if it is based upon the application of

9   improper legal standards.  *See Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v.*

10  *Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

11         In this context, the term "substantial evidence" means "more than a mere scintilla but less

12  than a preponderance-it is such relevant evidence that a reasonable mind might accept as adequate

13  to support the conclusion."  *Moncada*, 60 F.3d at 523; *see also Drouin*, 966 F.2d at 1257.  When

14  determining whether substantial evidence exists to support the Commissioner's decision, the Court

15  examines the administrative record as a whole, considering adverse as well as supporting evidence.

16  *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Where the

17  evidence is susceptible to more than one rational interpretation, the Court must defer to the decision

18  of the Commissioner.  *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

19  **IV.     THE EVALUATION OF DISABILITY**

20         Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

21  to engage in any substantial gainful activity owing to a physical or mental impairment that is

22  expected to result in death or which has lasted or is expected to last for a continuous period of at

23  least twelve months.  42 U.S.C. § 423(d)(1)(A); *Drouin*, 966 F.2d at 1257.

24

25

A.       **The Five-Step Evaluation Process**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. *Id.* § 416.920(a)(4)(I) & (b). If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of non-disability is made and the claim is denied. *Id.* § 416.920(a)(4)(ii) & ©. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. *Id.* § 416.920(a)(4)(iii) & ©.

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. *Id.* § 416.920(a)(4)(iv) & (e). The claimant has the burden of proving that she is unable to perform past relevant work. *Drouin*, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy. *See Valencia v. Heckler*, 751 F.2d 1082, 1086–87 (9th Cir. 1985). The determination of this issue comprises the fifth and final step in the sequential analysis. *See id.*

### B.      The ALJ's Application of the Five-Step Process

In this case, at step one, the ALJ found that Crawley had not engaged in any substantial gainful activity since the alleged onset date of the disability.  (AR 69).  At step two, the ALJ concluded that Crawley had the following "severe" impairments: HIV infection and osteopenia/osteoporosis.  *See id.*  At step three, the ALJ determined that Crawley's impairments do not meet or equal any of the impairments in the Listing.  (AR 70).  At step four, the ALJ found that Crawley retained the residual functional capacity to perform a range of sedentary work.  (AR 71). Specifically, the ALJ found that Crawley "can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk 2 hours and sit 6 hours in an 8-hour workday . . . is limited to occasional climbing, but no ladders, scaffolds or ropes and occasional balancing. stooping, kneeling, crouching and crawling." (*Id.*).   The ALJ further concluded that Crawley was capable of performing his past relevant work.  (AR 72).  At step five, the ALJ found that there are a significant number of jobs in the national and local economy that Crawley is capable of performing.  (AR 72).  Accordingly, the ALJ determined that Crawley is not disabled under the terms of the Social Security Act.  (*See id.*).

## V.     THE ALJ'S DECISION

Crawley contends that the ALJ:  (1) failed to base his step three finding upon substantial evidence and that he has conditions that meet portions of the Listing under 14.08F and 14.08I; (2) improperly disregarded a handwritten medical record at Exhibit 10F; and (3) relied upon unreliable vocational expert testimony for the ALJ's fourth step analysis.

### A.      Step Three Analysis

At step three in the sequential evaluation process, the ALJ must determine whether a claimant's impairment meets or equals an impairment contained in the Listings.   20 C.F.R. § 404.1520(d).  "The third step requires a determination of whether the impairment meets the duration requirement and the Listings."  *Benitez v. Callahan*, 121 F.3d 714, at *2 (9th Cir. 1997) (citation omitted).  *See also*, 20 C.F.R. §§ 416.920 (stating that the impairment must meet or equal one of the

1   Listings and the duration requirement).  To meet a listed impairment, the claimant "must have a

2   medically determinable impairment [ ] that satisfies all of the criteria in the listing." 20 C.F.R. §

3   404.1525(d).  If the claimant's impairment does not meet the Listing's criteria, it may still equal the

4   Listing if the claimant establishes symptoms, signs, and laboratory findings "at least equal in severity

5   and duration to the criteria of any listed impairment." 20 C.F.R. § 1526(a).

6        The ALJ determined that Crawley's HIV infection did not reach the level of severity to meet

7   or medically equal the requirement of Listing 14.08.  (AR 70).  The ALJ determined that Crawley

8   did not suffer from significant bacterial, fungal, protozoan or helminthic or viral infections pursuant

9   to Listing 14.08.  *See id.*  The ALJ also determined that Crawley did not have any neurological

10  abnormalities because Crawley did not experience cognitive or motor dysfunction caused by the HIV

11  infection.  *See id.*  The ALJ further determined that Crawley's back disorders did not meet or

12  medically equal one of the listed impairments.  *See id.*  The ALJ noted that there was no evidence

13  that demonstrated significant limitations in Crawley's ability to stand, walk or sit for long periods

14  of time and he was able to perform activities of daily living.  *See id.*

15              **1.      Section 14.08F**

16       The regulations provide in relevant part that "[a]ny individual with HIV infection, including

17  one with a diagnosis of acquired immune deficiency syndrome (AIDS), may be found disabled under

18  14.08 if his or her impairment meets the criteria in that listing or is medically equivalent to the

19  criteria in that listing." 20 C.F.R. § 404, Subpt. P, App. 1, § 14.00(F).  Listing 14.08F states in

20  relevant part that the claimant must have "conditions of the skin or mucous membranes with

21  extensive fungating or ulcerating lesions not responding to treatment (e.g., dermatological conditions

22  such as eczema or psoriasis, vulvovaginal or other mucosal candida,  condyloma caused by human

23  papillomavirus, genital ulcerative disease)." 20 C.F.R. § 404, Subpt. P, App. 1., § 14.08F.  The

24  record clearly demonstrates that Crawley has suffered from the required conditions of the skin or

25  mucous membranes.  Crawley's medical records reflect a diagnosis of lesions and condyloma.

1    Nonetheless, this condition must have lasted or be expected to last for a continuous period

2   of 12 months.  *See* 20 C.F.R. §§ 404.1525(c)(4), 416.925(c)(4).  Claimants with impairments of

3   insufficient duration are not disabled.  On two occasions, Dr. Schroeder stated that Crawley had

4   rectal condyloma.  First, on May 1, 2004, Dr. Schroeder noted that Crawley had rectal condyloma

5   in which Crawley had "numerous areas of prolapsing mucosa and a center area erythematous with

6   'cauliflowery' legion." (AR 201).  Dr. Schroeder further noted that he prescribed Aldara cream and

7   requested that Crawley return for a follow-up evaluation.  *Id.*  In Dr. Schroeder's June 2, 2004 report,

8   he stated that Crawley had "severe rectal lesions, verrucous exophytic lesions."  (AR 322).  Dr.

9   Schroeder ruled out "malignancy versus anal condyloma."  *Id.*  Dr. Schroeder further stated that

10   Crawley should be "referred to the colorectal surgeon for resection and excisional biopsy and

11   treatment."  *Id.*

12    On June 15, 2004, Dr. J. Dylan Curry examined Crawley and noted that Crawley had

13   "excoriated external hemorrhoids which are not actively bleeding, but which are present." (AR 324).

14   Dr. Curry further noted that Crawley may possibly have anal condylomata.  (AR 325).  On June 17,

15   2004, UMC personnel noted that Crawley was referred for colorectal surgery for rectal lesions.  (AR

16   275).  The medical records of Dr. Schroeder, Dr. Curry, and UMC medical personnel indicate that

17   Crawley's rectal lesions and condyloma occurred between May 1, 2004 to June 17, 2004.  Following

18   Dr. Curry's surgical treatment, Crawley's subsequent medical reports do not indicate that he

19   continued to suffer from lesions and condyloma.  Based on the medical records, it does not appear

20   that Crawley's lesions and condyloma failed to respond to treatment or that these conditions were

21   continuous over a period of twelve months.  Therefore, Crawley's conditions do not meet the

22   severity required by § 14.08F.  Crawley has failed to produce evidence to contradict this conclusion.

23    **2.    Section 14.08I**

24    Plaintiff also contends that the ALJ's finding that Crawley was not disabled pursuant to

25

1    Listing 14.08I is not supported by substantial evidence.  Listing 14.08I states:

2             HIV wasting syndrome, characterized by involuntary weight loss of
          10 percent or more of baseline (or other significant involuntary
3         weight loss, as described in 14.00D2) and, in the absence of a
          concurrent illness that could explain the findings, either:
4
          1.    Chronic diarrhea with two or more loose stools daily lasting
5               for 1 month or longer; or

6         2.    Chronic weakness and documented fever greater than 38° C
                (100.4° F) for the majority of 1 month or longer.
7

8    20 C.F.R. § 404, Subpt. P, App. 1., § 14.08I.

9             Crawley stated that he experienced involuntary weight loss of ten percent or more, and

10   therefore, he met the requirements for Listing 14.08.  There is evidence of Crawley's weight loss of

11   ten percent or more.   On January 9, 2003, Dr. Schroeder noted that Crawley weighed 147 pounds.

12   (AR 212).  On June 7, 2005, Dr. Schroeder noted that Crawley weighed 124 pounds.  (AR 314).  In

13   about a two and half year period, Crawley had weight loss of ten percent or more.

14            In addition, Crawley must have met either the chronic diarrhea or chronic weakness

15   requirements.  Crawley testified at the August 20, 2005 hearing that he continued to have severe

16   diarrhea, that he had weakness, and sometimes headaches and fever.   Dr. Schroeder, who saw

17   Crawley on a regular basis, did not discuss a specific cause(s) for Crawley's weight loss.  His records

18   do not indicate that Crawley complained of chronic diarrhea or chronic weakness.  Dr. Maningo

19   noted in his April 11, 2003 report that Crawley had occasional episodes of diarrhea.  (AR 183).  The

20   medical reports therefore support the conclusion that Crawley had occasional or intermittent

21   diarrhea, but do not show that he suffered from chronic diarrhea with two or more loose stools daily

22   lasting for one month or longer.  Nor do the records indicate that Plaintiff had chronic weakness and

23   documented fever greater than 38° C (100.4° F) for the majority of one month or longer. Where the

24   evidence is susceptible to more than one rational interpretation, the Court must defer to the decision

25

1   of the Commissioner. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258. The records suggest that

2   neither Crawley's diarrhea or weakness rose to the level of being chronic.

3         Therefore, viewing the medical evidence in its entirety, the Court finds that substantial

4   evidence supports the ALJ's or Commissioner's determination that Crawley's HIV infection did not

5   reach the level of severity to meet or medically equal the requirement of Listing 14.08F and Listing

6   14.08I of the Appendix.

7         **B.    Handwritten Medical Record**

8         Crawley argues that because the ALJ stated he was having difficulty reading and/or was

9   unable to read the handwritten medical record at Exhibit 10F (AR 290–292; AR 350–351), he should

10   have called a medical expert to assist him at the August 30, 2005 hearing. (AR 16). The disputed

11   records are handwritten notes dated November 3 and 19, 2004. In response to Crawley's argument,

12   the SSA Appeals Council noted that the ALJ considered all of the medical evidence. (AR 6). The

13   SSA Appeals Council further noted that "while a few of the words in the notes in Exhibit 10F may

14   be undecipherable, the major portion of the notes can be understood." *Id.*

15         Both the ALJ and Crawley's attorney discussed the 10F exhibit briefly during the hearing.

16   (AF 355–357). Crawley's attorney brought the 10F notes to the ALJ's decision to support Crawley's

17   weight loss. However, Crawley's significant weight loss is not in dispute. The ALJ conceded and

18   the record shows that Crawley's condition has resulted in considerable weight loss. Thus, Crawley's

19   purpose for introducing the 10F notes was recognized.

20         Regardless of the 10F notes, the record, as a whole, is neither ambiguous nor inadequate to

21   allow for proper evaluation of the evidence. In addition to these handwritten notes, the record

22   contains numerous medical records that are indisputably legible and that substantiate the ALJ's

23   decision. These types of cases reviewing voluminous medical records inevitably have some notes

24   that are illegible, but that does not mean there is a deficient record. *See Rose v. Astrue*, No.

25

1  CV06-1885, Slip Copy, 2008 WL 243691, at *10 (D.Ariz. Jan. 26, 2008 (noting that some medical

2  notes were illegible).

3  **C.   Residual Functional Capacity**

4       The fourth step of the sequential analysis is whether the claimant had the residual functional

5  capacity to perform his past relevant work.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).  The ALJ

6  reviews a claimant's residual functional capacity and the physical and mental demands of the work

7  he or she has previously performed.  *Id*.  If the ALJ determines the claimant has the residual

8  functional capacity required to perform his past work, the claimant is found not disabled.

9       In evaluating the fourth step, the ALJ found that Crawley had the residual functional capacity

10 to lift/carry 20 pounds occasionally and 10 pounds frequently, stand and walk about 2 hours and sit

11 6 hours in an 8-hour workday.  (AR 71–72).   This finding was supported by the reports of Dr.

12 Maningo and by the state agency physicians.   There was no contrary medical opinion regarding

13 Crawley's residual functional capacity.  Relying upon Dr. Maningo's assessment, the ALJ concluded

14 that Crawley was capable of performing at least medium exertional work.  (AR 71).

15      Work that a claimant performed within the last 15 years, which lasted long enough for him

16 or her to learn to do it, and was substantial gainful activity, is considered past relevant work.  *See*

17 20 C.F.R. §§ 404.1565(a), 416.965(a).  Crawley testified that he performed work as a revenue

18 manager, and prior to that, he performed work as a night auditor.  (AR 372–73).  Also, as required

19 by the SSA, Crawley provided a list of jobs he performed for the past 15 years on the SSA work

20 history form.[1]  (AR 144).

21      A vocational expert's testimony may constitute substantial evidence of a claimant's ability

22 to perform past relevant work and work that exists in significant numbers in the national economy

23

24      [1] From November 1995 to March 2004, Crawley noted that he had the following job titles: night audit
25 supervisor, front office manager, auditor, surveyist, front office agent, associate, revenue manager/front office associate, credit associate, and media specialist.

1   when the ALJ poses a hypothetical question that accurately describes all of the limitations and

2   restrictions of the claimant that are supported by the record.  *See Tackett v. Apfel*, 180 F.3d 1094,

3   1101 (9th Cir. 1999); *see also Robbins v. Social Security Administration*, 466 F.3d 880, 886 (9th Cir.

4   2006) (finding material error where the ALJ posed an incomplete hypothetical question to the

5   vocational expert which ignored improperly-disregarded testimony suggesting greater limitations).

6          At the hearing, the ALJ posed the following hypothetical question to the vocational expert:

7          Doctor, someone who can lift 20 pounds occasionally and ten pounds frequently,
           stand and walk two hours in an eight-hour day, sit for six hours.  Perform postural
8          maneuvers – that is climbing, balancing, stooping, kneeling, crouching, and crawling
           – occasionally.  No climbing of ladders, scaffolds, and the like.  And needs to avoid
9          concentrated, as opposed to moderate or all exposure, but avoid concentrated
           exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dust, gas,
10         etcetera, and hazards.  Could they do either of those jobs [revenue manager for a
           hotel and night auditor or front desk]?

11

12  (AR 374).   In response, the vocational expert answered in the affirmative.   (*See id.*).   The

13  above-quoted hypothetical question posed to the vocational expert accurately set forth Crawley's

14  residual functional capacity.  The ALJ's residual functional capacity finding was fully consistent

15  with Dr. Maningo, Nickles, and Villaflor's residual functional capacity assessments.  The ALJ

16  included the limitations of the residual functional capacity finding in the hypothetical.

17         Because the ALJ's determination that Crawley was not disabled at the fourth step was not

18  erroneous, the ALJ was not required to advance to the fifth step.  *See* 20 C.F.R. § 404.1520(a)(4) ("if

19  we can find that you are disabled or not disabled at a step, we make our determination or decision

20  and we do not go on to the next step.").   Usually, if the claimant cannot perform any past work due

21  to a severe impairment, then the ALJ must move to the fifth step, which requires consideration of

22  the claimant's residual functional capacity to perform other substantial gainful work in the national

23  economy in view of claimant's age, education, and work experience.  20 CFR §§ 404.1520(f).  Dr.

24  Generaux testified that an individual with Crawley's limitations could perform a number of

25  sedentary jobs in the national economy.  (AR 72).  Dr. Generaux testified that such jobs included

1   that of cashier, which had 7,387 jobs in Nevada and 144,525 jobs nationally; an interviewer, which

2   had 402 jobs in Nevada and 23,157 jobs nationally; and an order clerk, which had 153 jobs in

3   Nevada and 257,660 jobs in the national economy.  *Id.*

4        Viewing the evidence, as a whole, the Court finds that substantial evidence supports the

5   ALJ's conclusion that Crawley had the residual functional capacity to perform his past relevant work

6   as a credit associate, hotel revenue manager, employment services surveyor and hotel auditor.

7        **D.    Treating vs. Nontreating Physician**

8        Crawley states that he objects to the Report on the basis that the ALJ relied upon medical

9   reports from physicians that Crawley has never seen before.  (#51).

10       In Social Security cases, courts employ a hierarchy of deference to medical opinions

11  depending on the nature of the services provided.  Courts distinguish among the opinions of three

12  types of physicians: those who treat the claimant ("treating physicians") and two categories of

13  "nontreating physicians," namely those who examine but do not treat the claimant ("examining

14  physicians") and those who neither examine nor treat the claimant ("nonexamining physicians").

15  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).   A treating

16  physician's opinion is entitled to more weight than an examining physician's opinion, and an

17  examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.

18  *See id.*  In general, the opinion of a treating physician is entitled to greater weight than that of a

19  nontreating physician because the treating physician "is employed to cure and has a greater

20  opportunity to know and observe the patient as an individual."  *Morgan v. Commissioner of Social*

21  *Security Administration*, 169 F.3d 595, 600 (9th Cir. 1999) (citing *Sprague v. Bowen*, 812 F.2d 1226,

22  1230 (9th Cir. 1987)).

23       In his objection, Crawley fails to clarify the physicians upon which the ALJ relied who

24  Crawley claims to have never seen.   From the record, Dr. Gary L. Schroeder appears to have been

25  Crawley's primary treating physician.  Dr. Carl Recine, Dr. Julius Villaflor, Dr. Ian Haycocks, Dr.

1   George Bruce Nickles, Dr. J. Dylan Curry, and Dr. Rito B. Maningo also submitted assessments on

2   Crawley's condition.  The record is not entirely clear as to which of these physicians were examining

3   or nonexamining physicians.  Nonetheless, even if some of the physicians upon which the ALJ relied

4   did not actually see Crawley, the opinions of nonexamining physicians, including medical experts,

5   can constitute substantial evidence upon which an ALJ may rely when they are "supported by other

6   evidence in the record and are consistent with it."  *Morgan,* 169 F.3d at 600.  Crawley has not

7   demonstrated that any of the nonexamining physicians' opinions are unsupported or inconsistent

8   with the record.

9          Regarding the treating or examining physicians' opinions, they can only be disregarded in

10  narrow circumstances.  If the treating or examining physicians' opinions are not contradicted, they

11  can be rejected only with clear and convincing reasons.  *See Lester v. Chater,* 81 F.3d 821, 830 (9th

12  Cir. 1995).  Crawley has not identified any contradictions of the assessments rendered by Dr.

13  Schroeder or any of the other examining physicians.  Nor has Crawley given clear and convincing

14  reasons for rejecting any of the treating or examining physicians' opinions that are part of the

15  administrative record.  As a result, the ALJ appropriately relied upon the treating and nontreating

16  physicians' opinions and medical records.  Although greater weight is given to treating physicians,

17  an ALJ still gives weight to nontreating physicians' opinions.  *See, e.g., Ryan v. Comm'r of Soc. Sec.*,

18  528 F.3d 1194, 1198 (9th Cir. 2008) ("the opinion of an examining physician is entitled to greater

19  weight than the opinion of a nonexamining physician").

20  . . .

21  . . .

22

23

24

25

1

**CONCLUSION**

2          The Court finds that the ALJ's decision is supported by substantial evidence.  The Court

3   adopts the Report and Recommendation of Magistrate Judge George W. Foley, Jr.  IT IS HEREBY

4   ORDERED that Crawley's motion to remand (#8) is *denied*.

5          DATED: October 24, 2008

6

7                                              _____

8                                              Robert C. Jones
                                               United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   (bb)